FILED
FEB - 9 2009
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY            Deputy Clerk

ENTERED
FEB 10 2009
CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY            Deputy Clerk

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

| | |
|---|---|
| In re: | Case No. 6:08-bk-21645-PC |
| | Chapter 13 |
| LUIS GUSTAVO NUNEZ and SANDRA LYNN NUNEZ, | **MEMORANDUM DECISION** |
| | Date: February 4, 2009 |
| | Time: 1:30 p.m. |
| | Place: United States Bankruptcy Court |
| | Courtroom # 304 |
| Debtors. | 3420 Twelfth Street |
| | Riverside, CA 92501 |

Before the court is the motion of Luis Gustavo Nunez and Sandra Lynn Nunez ("Debtors") for modification of their confirmed chapter 13 plan ("Motion"). Rod Danielson, chapter 13 trustee ("Danielson"), opposes the Motion. At the hearing, Pam Lacey appeared for the Debtors and Elizabeth Schneider appeared for Danielson. The court, having considered the pleadings, evidentiary record, and arguments of counsel, makes the following findings of fact and conclusions of law[1] pursuant to F.R.Civ.P. 52, as incorporated into FRBP 7052 and applied to contested matters by FRBP 9014(c).[2]

### I. STATEMENT OF FACTS

On September 2, 2008, Debtors filed their voluntary chapter 13 petition. In the schedules filed with the petition, Debtors disclosed real and personal property valued at $404,200,

---

[1] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.

[2] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse and Consumer Prevention Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005). "Rule" references are to the Federal Rules of Bankruptcy Procedure ("F.R.Civ.P."), which make applicable certain Federal Rules of Civil Procedure ("FRBP").

1 including a residence, two vehicles, and an interest in an ERISA-qualified 401K retirement
2 account. Debtors' statement of financial affairs reveals that Debtors had gross income of
3 $120,840 and $106,092 in 2007 and 2006, respectively. Debtors' residence valued at $368,000 is
4 encumbered by a deed of trust securing a debt of $368,483 and a tax lien for $2,500. Debtors
5 also owe $14,232 on a 2005 Scion valued at $8,400. Debtors list 20 creditors in Schedule F
6 holding unsecured nonpriority claims totaling $54,836 consisting primarily of credit card debt.
7 There are no unsecured priority claims according to Schedule E.

8     Debtors' income is "above median" according to their Form B22C, <u>Chapter 13 Statement</u>
9 <u>of Current Monthly Income and Calculation of Commitment Period and Disposable Income</u>
10 ("Form B22C") filed under penalty of perjury with the petition. As a result, Debtors were
11 required by § 1325(b)(3) to calculate their expenses pursuant to § 707(b)(2), which resulted in
12 monthly disposable income under § 1325(b)(2) as a negative number: -$2,442.86. Debtors'
13 Schedules I and J painted a different picture. Schedules I and J reflected monthly income and
14 expenses of $6,290 and $5,528, respectively, with monthly net income of $762. In their original
15 plan, Debtors proposed to pay to Danielson the sum of $760 per month for a period of 36
16 months, which was estimated to pay 0 % of allowed unsecured nonpriority claims. On
17 September 22, 2008, Debtors filed a First Amended Chapter 13 Plan which increased the
18 proposed plan payment to $961 per month for 36 months, but still provided no dividend to
19 general unsecured creditors.

20     Prior to confirmation, Danielson attacked the veracity of the Debtors' calculations in their
21 sworn Form B22C based upon proof of income and documentation provided (or not provided) in
22 conjunction with meetings of creditors. According to Danielson's objection to the Debtors'
23 Motion:

24     "At the time of plan confirmation, it was the position of the Chapter 13 Trustee that debtors' disposable income was a positive number based on adjustments to the debtors'
25 means test in the areas of income (an adjustment of $2,905/month based on the proof of income submitted); taxes (an adjustment of $526/month, again, based on proof of income
26 submitted); and telecommunications (an adjustment of $75/month as the debtors provided no documentation in support of the amount taken in addition to their basic home
27

- 2 -

    telephone and cell phone service already included in the Local Standards for Housing and Utilities). Based on the adjusted "bottom line" number, per the debtors' means test, in the total amount of $1,063, the percent to unsecured creditors needed to be raised accordingly. In order to make the plan payment an amount that was more affordable, the plan payment was calculated over a 60 month period. . . . In addition, the net income based on proof was more than reflected in Schedule I in the amount of $241/month giving the debtors a total of $1,701/month to make the agreed upon plan payment of $1,334/month."

Danielson further states:

    "[T]he original position of the Chapter 13 Trustee was the plan should be a 96-100 % plan, but, based on negotiations at the 341a Meeting of Creditors, the 75%, 60 month plan was the agreed upon resolution to the Chapter 13 Trustee's objection to plan confirmation."

Debtors do not dispute these allegations.

    On November 5, 2008, the court held a hearing on confirmation of the Debtors' First Amended Chapter 13 Plan at which time the Debtors' plan was confirmed on Danielson's recommendation based upon the following terms: $1,334 per month for a period of 60 months, with a base amount of $80,040 and estimated payment of 75% of allowed unsecured nonpriority claims. Debtors did not raise any objection to the plan terms at the confirmation hearing. An order confirming the Debtors' first amended plan was entered on November 7, 2008.

    On January 5, 2009, Danielson filed a motion to dismiss the case under § 1307(c)(6) alleging a material default by the Debtors under their confirmed plan due to payment delinquencies since confirmation of $2,453. On January 10, 2009, Debtors responded by filing a motion to modify their confirmed plan pursuant to § 1329. On January 20, 2009, Debtors also filed opposition to Danielson's dismissal motion.

    Debtors' proposed modification seeks to (1) reduce the term of the plan by 21 months, *i.e.*, from 60 months to 39 months; (2) reduce the monthly plan payment from $1,334 to $961; (3) reduce the base amount of the plan from $80,040 to $37,479; and (4) reduce the percentage paid to Class 5 unsecured nonpriority claims from 75% to 0%. According to the Debtors, "[t]he plan was confirmed at an amount that was greater than the Debtors can afford." Debtors further argue that "there is no basis for requiring a 60 month plan as the Debtor's Current Monthly Income

Calculation shows a negative figure." Debtors have filed amended Schedules I and J in conjunction with their proposed modification. Debtors admit, however, that the only material change in their financial situation since confirmation is that their mortgage payment increased approximately $118, *i.e.*, "from $2,704.22 to $2,821.89, beginning December 1, 2008."

## II. DISCUSSION

This court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(b) and 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (L) and (O). Venue is appropriate in this court. 28 U.S.C. § 1409(a).

Section 1329(a), which authorizes modification of a confirmed plan, provides, in pertinent part:

> At any time after confirmation of the plan, but before the completion of plan payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to –
>
> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan; [or]
>
> (2) extend or reduce the time for such payments; . . . .

11 U.S.C. § 1329(a)(1) & (2). Debtors have an absolute right to request modification between confirmation and completion of the plan, subject to the limitations of § 1329. Powers v. Savage (In re Powers), 202 B.R. 619, 622 (9th Cir. BAP 1996). The court has discretion to grant a motion to modify a chapter 13 plan, so long as the plan, as modified, meets the applicable confirmation requirements of chapter 13. Id. Debtors are not required to demonstrate a substantial, unanticipated change in circumstances to justify a modification proposing a reduction in plan payments. Id. However, a change in financial circumstances is a factor to be considered by the court in determining, in its discretion, whether a modification should be approved. Id.

Because modification of a confirmed plan essentially involves confirmation of a new plan, the modified plan must comply with the statutory requirements for confirmation. Max Recovery, Inc. v. Than (In re Than), 215 B.R. 430, 434 (9th Cir. BAP 1997). By virtue of § 1329(b)(1), the confirmation requirements of § 1325(a) apply to any plan modification under §

-4-

1329(a). 11 U.S.C. § 1329(b)(1). By its terms, however, § 1329(b)(1) "does not mandate satisfaction of the disposable income test of § 1325(b)(1)(B) with respect to modified plans." Sunahara v. Burchards (In re Sunahara), 326 B.R. 768, 781 (9th Cir. BAP 2005). Instead, a debtor's circumstances, and the debtor's proposal to deal with them in the modified plan, are considered in the context of the good faith analysis under § 1325(a)(3). Id. "Such a determination necessarily requires an assessment of a debtor's overall financial condition including, without limitation, the debtor's current disposable income, the likelihood that the debtor's disposable income will significantly increase due to increased income or decreased expenses over the remaining term of the original plan, the proximity of time between confirmation of the original plan and the filing of the modification motion, and the risk of default over the remaining term of the plan versus the certainty of immediate payment to creditors." Id. at 781-82. But see In re Keller, 329 B.R. 697, 701 (Bankr. E.D. Cal. 2005) (questioning whether Sunhara requires the court, in the context of determining good faith, "to weigh each debtor's economic circumstances to determine whether the dividend payable to unsecured creditors under a modified plan is the debtor's best efforts or is otherwise sufficiently substantial, meaningful, fair or equitable?"). Other factors to be considered in divining good faith include the substantiality of proposed payment plans; whether the debtor has misrepresented facts in the plan; whether the debtor has unfairly manipulated the Bankruptcy Code; and whether the plan is proposed in an equitable manner. Goeb v. Heid (In re Goeb), 675 F.2d 1386, 1390 (9th Cir. 1982); see Villanueva v. Dowell (In re Villanueva), 274 B.R. 836, 841 (9th Cir. BAP 2002) ("As good faith under § 1325(a)(3) is neither defined by the statute nor explained in legislative history, courts in this circuit have adopted a multi-factor, case-by-case approach to the good faith inquiry."). The burden of establishing that a plan is submitted in good faith is on the debtor. Fidelity & Cas. Co. of N.Y. v. Warren (In re Warren), 89 B.R. 87, 93 (9th Cir. BAP 1988).

In this case, Debtors claim that their confirmed plan is not affordable and must be modified. Debtors have the burden of producing evidence to establish each element of § 1329(a),

-5-

including evidence that the modification is proposed in good faith. In reviewing Debtors' overall financial condition, the court notes that only 66 days have lapsed between the date of the confirmation hearing and the filing of the Motion. There is little credible evidence that Debtors' disposable income has changed significantly since confirmation of the plan.[3] Indeed, Debtors' admit that the only material change in their financial situation since confirmation is that their mortgage payment increased approximately $118. Nor is there a likelihood that the Debtors' disposable income will significantly increase or decrease due to changes in income or expenses over the remaining term of the original plan. Indeed, Debtors' amended Schedules I and J state specifically that the Debtors do not anticipate either an increase in income or a decrease in expenses within the next 12 months. Debtors have yet to make regular payments under their confirmed plan, but seek by modification to eliminate any dividend to general unsecured creditors. Under the circumstances, it is difficult to assess the risk of default over the remaining term of the plan versus the certainty of immediate payment to creditors. Because there is little credible evidence that Debtors' economic circumstances since confirmation have changed so significantly as to warrant the severe modification requested, the court cannot find that the Debtors' modification is proposed in good faith as required by § 1325(a)(3) as incorporated into § 1329(a).

Debtors further argue that "there is no basis for requiring a 60 month term as the Debtors' current Monthly Income Calculation shows a negative number." For confirmation of a plan, an above median debtor's "disposable income" is calculated using the means test of § 707(b)(2), without reference to Schedules I and J. 11 U.S.C. § 1325(b)(3). In the Ninth Circuit, an above median debtor's "projected disposable income" is determined using the debtor's "disposable income" figure, as calculated using Form B22C, and multiplying that figure by the applicable

---

[3] Amended Schedule I reflects a $94 decrease in income from Debtors' original Schedule I. Amended Schedule J discloses the increased mortgage payment, but also shows that total monthly expenses have been reduced by $294 from Debtors' original Schedule I resulting in an increase in monthly net disposable income.

commitment period. Maney v. Kagenveama (In re Kagenveama), 541 F.3d 859, (9th Cir. 2008). If the disposable income, defined in § 1325(b)(2) and calculated on Form B22C, is a negative number, the debtor has no projected disposable income and the applicable commitment period is irrelevant. Id. at 877. This assumes, however, that the information disclosed in Form B22C is accurate.[4] In this case, the information which was disclosed in the Debtors' Form B22C and formed the basis for the negative number was inaccurate. Debtors' disposable income was, in fact, a *positive* number under the means test after adjustments were made to the Debtors' Form B22C based upon proof of the Debtors' actual income and expenses. The court will not reconsider the findings made the basis for confirmation of the Debtors' plan under § 1325. Debtors did not question the terms of the plan at the confirmation hearing, appeal the confirmation order, nor seek relief from the order under FRBP 9024.

Having rejected the notion that the calculation of "disposable income" under § 1325(b)(2) is merely a starting point for deriving "projected disposable income" and that "[c]ourts may consider both the future and historical finances of the debtor to make the calculation,"[5] Kagenveama would not permit above median debtors to circumvent by modification immediately after confirmation the ill effects of a chapter 13 plan confirmed pursuant to the means test. Recognizing that its interpretation of "the new law may produce less favorable results for *unsecured creditors* when applied to above median income Chapter 13 debtors,"[6] the Ninth Circuit in Kagenveama pointed out that changes in the debtor's expenses or income *after confirmation* could be addressed by modification under § 1329. 541 F.3d at 877 ("If [a debtor's] income changes *in the future* before completion of the plan, the Trustee or the holder of an

---

[4] The accuracy of the information provided by the debtor in Form B22C goes directly to the issue of good faith under § 1325(a)(3).

[5] Kagenveama, 541 F.3d at 874 (abrogating Pak v. eCase Settlement Corp. (In re Pak), 378 B.R. 257 (9th Cir. BAP 2007).

[6] Id. at 875.

1 | allowed unsecured claim may seek modification of the plan under § 1329.") (emphasis added).
2 | Whether sought by the debtor, trustee, or an unsecured creditor, a § 1329 plan modification must
3 | be based upon changes in the debtor's expenses or income after confirmation. The court then
4 | reviews the debtor's circumstances at the time of modification to assess the debtor's ability to
5 | pay going forward, as opposed to applying a set amount based on the six month period prior to
6 | bankruptcy.

## CONCLUSION

Debtors have not established that the modification is proposed in good faith. There is little credible evidence that Debtors' economic circumstances since confirmation have changed so significantly as to warrant the severe modification requested. Therefore, the Debtors' Motion is denied without prejudice.

A separate order will be entered consistent with this opinion.

Dated: February 9, 2009

PETER H. CARROLL
United States Bankruptcy Judge

- 8 -

| In re:<br>NUNEZ,<br><br>Debtor(s). | CHAPTER 13<br><br>CASE NUMBER  RS 08-21645 PC |
|---|---|

NOTE: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
3420 12TH STREET, RIVERSIDE, CA 92501

The foregoing document described  MEMORANDUM DECISION   will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On 2/9/09 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Rod (PC) Danielson    notice-efile@rodan13.com
Andrew David Goldberg    agoldberg@rosicki.com
Kian Mottahedeh    notice@pricelawgroup.com
United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On   2/9/09   I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

Luis Gustavo Nunez
Sandra Lynn Nunez
9540 Hermitage Lane
Riverside, CA  92503

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009    F 9013-3.1

| In re:<br>NUNEZ,                    | CHAPTER 13                      |
|                         Debtor(s).  | CASE NUMBER   RS 08-21645 PC    |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 2·9·09 | Connie Ray | *ConnieRay* |
|--------|------------|-------------|
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9013-3.1

| In re: NUNEZ, | CHAPTER: 13 |
|---|---|
| Debtor(s). | CASE NUMBER: RS08-21645 |

**NOTE TO USERS OF THIS FORM:**
1) Attach this form to the last page of a proposed Order or Judgment. Do not file as a separate document.
2) The title of the judgment or order and all service information must be filled in by the party lodging the order.
3) **Category I.** below: The United States trustee and case trustee (if any) will always be in this category.
4) **Category II.** below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) _____ MEMORANDUM DECISION _was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of 2/9/09, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

Rod (PC) Danielson    notice-efile@rodan13.com
Andrew David Goldberg    agoldberg@rosicki.com
Kian Mottahedeh    notice@pricelawgroup.com
United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

Luis Gustavo Nunez
Sandra Lynn Nunez
9540 Hermitage Lane
Riverside, CA 92503

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page

___

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009    **F 9021-1.1**